[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
CT Page 5578-UUU The plaintiff and defendant, whose maiden name was Anderson, intermarried at New London, Connecticut, on May 11, 1963; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there are no minor children issue of the marriage; that there are three adult daughters of the marriage; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably and that there is no hope of reconciliation.
The plaintiff testified that marital problems began several years ago; that he suffered from loneliness since he was alone most of the time; that defendant didn't share in plaintiff's hobbies and just liked to read and that sex between the two was infrequent during the past three to four years. Plaintiff moved out of the marital home during September, 1995, and moved in with a woman friend in Groton, Connecticut. He pays her $150 per week and shares some household expenses with her.
The defendant testified that during the marriage the plaintiff had an affair with the woman he now lives with; that he admitted this to the defendant; that plaintiff told defendant that his woman friend had a son that you never gave me; that on occasions during the marriage, plaintiff made advances to women present at fire department parties, and that he would not assist with their minor daughter, Michele, when at the age of 15, she attempted suicide.
Defendant attempted to get plaintiff to counseling as she felt the marriage should continue for life. Defendant refused counseling, told the defendant he wanted to be free, and brought the pending action October 6, 1995.
As a result of plaintiff's leaving, defendant underwent emotional stress which caused her to undergo counseling to prepare her for a life without the plaintiff.
Plaintiff, who was born March 30, 1942, is a meat cutter by trade and has worked at Stop Shop for 28 years. Further, plaintiff is skilled in wood working and is capable of earning some income from that talent.
Plaintiff purchased a business known as Phil's Bait 
CT Page 5578-VVV Tackle for $35,000. He has an annual income of approximately $11,000 from the business. See Plaintiff's Exhibit A and Defendant's Exhibit 2.
The plaintiff has gross weekly income of $1,009 and a net weekly income of $744.
Plaintiff lost portions of the little finger on each hand. He claims he had a heart attack seven or eight years ago, but the defendant denies this, claiming plaintiff had an angina attack which hospitalized him three to four days. Further, plaintiff claims he is suffering from arthritis and takes 12 aspirins daily. Notwithstanding the above, plaintiff appears to be in good health. His continued employment seems likely.
During the marriage, defendant was employed for 13 years at United Nuclear. She left that employment to help the plaintiff run the Phil's Bait Tackle business. She presently is employed for Manpower and is now assigned to Millstone where she works 40 hours per week. She only gets paid for the hours she works. According to her financial affidavit, dated August 20, 1996, the defendant has a gross weekly income of $386 and a net weekly income of $309.86.
The defendant, who was born October 22, 1940, has a high school education. In addition, defendant took some college courses. She appears to be in good health except for the emotional stress she suffers because of the breakdown of her marriage. Her ability to be employed seems good.
In the early 1970's, the parties purchased the marital residence located at 338 Fitch Hill Road, Uncasville, Connecticut, for $17,000. Plaintiff, with his wood working talents, made many improvements to the home. Presently, the home has a fair market value of $115,000. (Defendant's Exhibit 1.) However, the home is subject to two mortgages totalling approximately $64,000 leaving an equity of $51,000.
In addition, the parties own real estate in Intercession City, Florida, for which they paid $28,000. Both parties agreed that the property was actually for their daughter, Christine, who presently occupies the property and that when she repays the parties $28,000, title to the premises will be transferred to her. The defendant admitted that Christine has repaid $20,000 which leaves a balance of $8,000. CT Page 5578-WWW
During his employment, plaintiff has contributed to a pension at Stop Shop which will provide plaintiff with $370 monthly if he retires at age 55 and $640 monthly if he retires at age 62.
Defendant has, by virtue of her employment, an IRA valued at $10,651 and a T. Rowe Price funds valued at $24,412.
The other marital assets of the parties will be more specifically identified in the court's orders.
The court finds that the destruction of the marriage was caused by the attitude of the plaintiff, his extramarital affairs and his unwillingness to attempt to save the marriage.
After considering the evidence and my findings in light of Connecticut General Statutes §§ 46b-62, 46b-81 and46b-82, as well as other pertinent statutes, the tax implications and consequences of the financial awards set forth below, judgment may enter dissolving the marriage of the parties on the ground of irretrievable breakdown without any hope for reconciliation.
It is further ordered that:
(1) The plaintiff shall pay to the defendant the sum of $200 per week as periodic alimony for a term of six years, her death, remarriage or cohabitation with an unrelated male, whichever is the first to occur. The alimony shall be nonmodifiable to term only.
(2) The plaintiff shall transfer to the defendant all his right, title and interest in and to the marital home located in Uncasville, Connecticut, subject to all mortgages and encumbrances thereon. The defendant shall hold the plaintiff harmless from any claims thereon. Each shall pay one half of the $300 fee for the appraisal of said property.
(3) There is assigned and vested in the defendant 50 percent of the present value of the plaintiff's pension with Stop Shop by way of a Qualified Domestic Relations Order (QDRO). If defendant predeceases the plaintiff, said 50 percent shall revert to the plaintiff and he shall be the survivor beneficiary thereof. Defendant shall be the survivor CT Page 5578-XXX beneficiary on plaintiff's share of the pension.
(4) The plaintiff shall keep the business known as Phil's Bait Tackle free and clear of any claims by the defendant.
(5) The $8,000 balance owed by the parties' daughter, Christine, is assigned to the plaintiff without any claim thereon by the defendant.
(6) The defendant shall keep and own all the household furniture in the marital residence except for the furniture set forth on Exhibit A attached to defendant's claims for relief, which shall belong to the plaintiff; her IRA and T. Rowe Price fund; her Fleet Bank account; her 1993 Mercury Sable; and the television set.
(7) The plaintiff shall keep and own all the items of lumber, tools and personal property listed on said Exhibit A except for the gardening tools specified in said exhibit which shall belong to the defendant; the Citizens Bank accounts; the 1992 Chevrolet truck; and the organ.
(8) The plaintiff shall maintain his currently existing life insurance policy on his life with the defendant as the irrevocable beneficiary thereof. He shall provide her with written authorization so that she may confirm the continued existence of the policy and the beneficiary designation. Further, he shall cooperate with the defendant in her attempts to obtain at her cost, further life insurance on the plaintiff.
(9) Plaintiff shall, within thirty (30) days, reimburse defendant for his share of the automobile liability policy on the 1992 Chevrolet as per prior court orders, plus the arrearage owed defendant pursuant to the order of Judge Austin.
(10) Each party shall pay the debts listed in their respective financial affidavits.
(11) Plaintiff shall save the defendant harmless and indemnify her from any tax liability that might be assessed against them from joint income taxes filed during their marriage.
(12) The parties shall pay their own attorney's fees. CT Page 5578-YYY
(13) All documents incidental or necessary to the fulfillment of these orders shall be executed within thirty (30) days. The court shall retain jurisdiction over the QDRO until it has been executed. All personal property, if not yet done, shall be accomplished within thirty (30) days.
Paul M. Vasington Judge Trial Referee